FILED

06/20/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0286

DA 16-0286

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 149N

IN THE MATTER OF:

A. P.,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DI 16-0022
Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Carolynn M. Fagan, Fagan Law Office, Missoula, Montana

      For Appellee:

      Timothy C. Fox, Montana Attorney General, Ryan W. Aikin, Assistant
Attorney General, Helena, Montana

      Scott D. Twito, Yellowstone County Attorney, Billings, Montana

Submitted on Briefs:  May 17, 2017

Decided:  June 20, 2017

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 A.P. is a homeless man in his sixties suffering from schizophrenia. Between February 4, 2016, and March 2, 2016, A.P. presented to the Billings Clinic (Clinic) emergency room on five occasions. He was admitted to the psychiatric center on three of these occasions. On March 2, the Yellowstone County Attorney's Office filed a petition for commitment and the Thirteenth Judicial District Court, finding probable cause, appointed counsel for A.P. and ordered him detained at the Clinic pending resolution of the petition.

¶3 The District Court conducted an initial hearing on March 3, 2016. A.P.'s appointed "professional person" submitted a doctor's report on March 4, 2016. The doctor's report concluded A.P. required commitment because of his mental disorder and, as a result of his failure to take his medications, was delusional, paranoid, and a threat to himself. The report noted A.P. was suffering from suicidal and homicidal ideations. The report continued, "[H]e may not be able to care for himself adequately and could possibly put himself in harm's way. [A.P.] could possibly be a threat to others due to his paranoia." The report

2

further concluded that A.P. should be committed to Warm Springs State Hospital and the hospital should be authorized to administer involuntary medication to him.

¶4    Following the March 7 evidentiary hearing, the District Court granted the State's petition to commit A.P. for up to ninety days. The court further authorized the hospital to administer involuntary medication to A.P. if necessary to facilitate treatment. A.P. appeals. We affirm in part and reverse in part.

¶5    Citing § 53-21-126(1)(a), MCA, A.P. argues that the State failed to prove beyond a reasonable doubt that he was unable to provide for his own basic needs of food, clothing, shelter, health, or safety because of his mental disorder. He also maintains that the court's determination to allow for the administration of involuntary medication because it "*may* be necessary to facilitate treatment," relied upon an incorrect standard. A.P. asserts that § 53-21-127(6), MCA, allows courts to order involuntary medication when such medication "*is* necessary to protect the respondent or the public or to facilitate effective treatment."

¶6    Substantial evidence including, but not limited to, A.P.'s multiple emergency room visits within thirty days, supports the District Court's findings of fact and its conclusion to grant the State's commitment petition. As noted by the court, A.P. suffers from untreated schizophrenia, a serious mental disorder, manifesting in delusions, confusion, paranoia, and anxiety. The court further observed that A.P.'s thoughts "are too disorganized to care for himself, and he could put himself at risk." We affirm the portion of the court's order committing A.P. to the State hospital for up to ninety days.

¶7 The State concedes that the District Court erred in authorizing the administration of involuntary medication of A.P.; therefore, we reverse that portion of the court's order. As we stated in *In re R.H.*, 2016 MT 329, 385 Mont. 530, 385 P.3d 556, "due to the constitutional rights at stake during an involuntary commitment, we require 'strict adherence' to the statutory scheme." *In re R.H.*, ¶ 18. Here, the evidence before the District Court does not support a conclusion that medications must be involuntarily administered to facilitate treatment. A.P., while refusing to take his medications for high cholesterol and glaucoma, took his mental health medications administered by the Clinic staff. For this reason, the court's holding that the administration of involuntary medications "may be necessary" to facilitate treatment was incorrect and did not satisfy the statutory standard. Consequently, we reverse the portion of the order authorizing involuntary medication and remand for entry of an order vacating authorization of involuntary medication.

¶8 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's findings of fact pertaining to commitment are not clearly erroneous and its interpretation and application of the law were correct. Its interpretation and application of the law pertaining to the administration of involuntary medication was incorrect; consequently, we reverse that portion of the District Court's order.

¶9 Affirmed in part and reversed in part.

4

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE